Marvin A. WILLIAMS, Appellant,

v.

Lester M. TWEED, et al., Respondents.

No. C7–94–653.

Court of Appeals of Minnesota.

Aug. 23, 1994.

Review Denied Oct. 27, 1994.

John E. Rode, Rode, Lucas & Schellhas, Edinborough Corporate Center, Minneapolis, for appellant.

Ted N. Lundrigan, Lundrigan & Swanson, Pine River, for respondents.

Considered and decided by DAVIES, P.J., and SCHUMACHER and AMUNDSON, JJ.

## OPINION

DAVIES, Judge.

Appellant, who was injured falling into an abandoned septic tank, challenges the district court's summary judgment for the former landowners. We affirm.

## FACTS

Sometime between the years 1956 and 1965, respondents Lester and Lavonne Tweed installed a septic tank at their home in Pequot Lakes. The Village of Pequot Lakes subsequently constructed a sewer system and required all abutting homeowners to connect to the system. In 1965, the Tweeds connected their home to the sewer system and abandoned the septic tank. The Tweeds sold their home and moved in 1967.

In 1992, appellant Marvin Williams, who was leasing the Tweeds' former home, was injured when the tank cover collapsed, dropping him into the long-abandoned septic tank. Williams sued the Tweeds for fraud and misrepresentation, negligence, and negligence per se. The Tweeds moved for summary judgment, which the district court granted on the grounds that Williams failed to present adequate evidence of a genuine issue of fact on the fraud and misrepresentation claim, and that the statute of limitations imposed by Minn.Stat. § 541.051 barred the negligence claims. We affirm.

## ISSUES

I. Did the district court err in dismissing the fraud and misrepresentation claim on the ground that appellant failed to present adequate evidence raising a genuine issue of fact?

II. Did the district court err in holding that respondents' negligence claims are barred by Minn.Stat. § 541.051?

## ANALYSIS

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.

Minn.R.Civ.P. 56.03. On appeal from summary judgment, this court must determine whether the district court erroneously applied the law, and whether any genuine issues of material fact exist. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn. 1992).

## I.

### Fraud and Misrepresentation Claim

Williams argues that the district court erred in dismissing his claim of "fraud and misrepresentation."

The Minnesota Supreme Court has recognized that fraud is " 'a protean legal concept, assuming many shapes and forms.' " *Florenzano v. Olson,* 387 N.W.2d 168, 172 (Minn. 1986) (quoting *Jacobs v. Farmland Mut. Ins.,* 377 N.W.2d 441, 444 n. 1 (Minn.1985)). Indiscriminate use of the word fraud when referring to misrepresentation has caused much confusion in the courts. *Id.* (citing W. Prosser, Law of Torts § 105, at 684 (4th ed. 1971)). This case is illustrative.

■ Here, in paragraphs XXV, XXVI, and XXVII of his complaint, Williams repeatedly alleges that the Tweeds "fraudulently misrepresented" the condition of the property; Williams fails to allege fraud independent of representation. Therefore, we review the complaint as alleging a cause of action for a fraudulent misrepresentation.

■ Three types of misrepresentations fall under this broad category of fraud: reckless misrepresentation, negligent misrepresentation, and deceit. *Florenzano v. Olson,* 387 N.W.2d at 177 (Simonett, J., concurring specially).

■ Although differentiating between the three types could prove difficult under the facts presented, we need not decide that issue because all three types require, at a minimum, allegations of a misrepresentation. *Id.* at 177–78 n. 1–3 & 5. Here, Williams does not allege that the Tweeds misrepresented anything to him, nor did he submit any affidavits so stating. Instead, Williams relies on his complaint, arguing that the Tweeds

failed to support their summary judgment motion with facts that negate the complaint. But Williams misses the point—we need not even consider whether the Tweeds supported their summary judgment motion with facts negating his complaint because the district court properly ruled that Williams failed to produce any evidence supporting his claim. *See Karlstad State Bank v. Fritsche,* 392 N.W.2d 615, 618 (Minn.App.1986) (affirming summary judgment where plaintiffs failed to present material facts allowing recovery in fraud); *Henry v. Raynor Mfg. Co.,* 753 F.Supp. 278, 283 (D.Minn.1990) (granting summary judgment where plaintiff failed to support fraudulent concealment claim with factual allegations of fiduciary or confidential relationship, or that defendant affirmatively acted to prevent plaintiff from discovering the cause of action).

Thus, because Williams failed to support his claim with any evidence of a misrepresentation, there is no genuine issue of material fact. The district court properly granted summary judgment for the Tweeds.

## II.

### Negligence Claims

■ Construction of a statute is a question of law. *Meister v. Western Nat'l Mut. Ins.,* 479 N.W.2d 372, 376 (Minn.1992). This court is not bound by and need not give deference to the district court's application of a statute to undisputed facts. *Id.*

Minn.Stat. § 541.051 provides in part:

Except where fraud is involved, no action by any person * * * to recover damages * * * for bodily injury or wrongful death, arising out of the defective and unsafe condition of an *improvement to real property* * * * shall be brought * * * against the owner of the real property more than two years after discovery of the injury * * *, nor, in any event shall such a cause of action accrue more than ten years after substantial completion of the construction.

Minn.Stat. § 541.051, subd. 1(a) (1992) (emphasis added).[1] Minnesota courts have defined an "improvement to real property" as

---

1. Although section 541.051 specifically provides

an exception for cases where fraud is involved,

"a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as · distinguished from ordinary repairs."

*Pacific Indem. Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 554 (Minn.1977) (quoting *Kloster–Madsen, Inc. v. Tafi's, Inc.*, 303 Minn. 59, 63, 226 N.W.2d 603, 607 (1975)). A "common sense" approach is to be taken in interpreting whether something constitutes an improvement to real property under the statute. *Id.* Moreover, section 541.051 is to be construed so that the plain meaning applies, without resort to technical legal constructions of its terms. *Id.*

Williams concedes that section 541.-051 applies to the *construction* of a septic system under *Wittmer v. Ruegemer*, 402 N.W.2d 187, 189 (Minn.App.1987) ("[C]onstruction of a septic system is an improvement to real property."), *aff'd in part and rev'd in part*, 419 N.W.2d 493 (Minn.1988). But Williams argues that the statute does not apply to an allegedly defective *abandonment* of a septic system, which is what caused the injuries here. More specifically, Williams contends that, just as an ordinary repair is not an "improvement" since it does not cause the repaired item to increase in value, the Tweeds' covering of the septic tank hole was not an improvement since it did not cause an increase in the property value. *See Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.*, 450 N.W.2d 183, 186 (Minn.App.1990) (a repair only restores, and does not increase, the value and utility of an object), *pet. for rev. denied* (Minn. Mar. 22, 1990).

We disagree because, under the common sense approach, the proper abandonment of a septic tank falls within section 541.051's definition of an improvement to real property. The Tweeds' covering of the hole was either a defective improvement, a defective part of an improvement, or a defective attempt at an improvement. Regardless of how we view their covering of the tank, however, the statute applies.

The proper abandonment is an improvement because, if the Tweeds had not "abandoned" the tank as required by the city, it would have been a job left for the next owner, decreasing the property's value. Conversely, then, the abandonment—apparently per the rules—increased the property's value and constituted an improvement.

Likewise, we reject Williams' argument that the Tweeds' covering of the hole with wood, earth, and grass—without filling it in—was merely a repair. The actions of covering the tank with earth and grass increased the value of the property by making it appear the tank was filled in and, thus, properly abandoned. The covering of the tank added value, until it proved defective 27 years later when the rotted wood gave way. It constituted an improvement, albeit a defective improvement.

Thus, we think it fair to consider the Tweeds' abandonment of their septic tank an improvement to real property, thereby rendering section 541.051 applicable to Williams' negligence claims.

We find support for this conclusion in the fact that connecting to the city water and filling in septic tanks is normally done by contractors, the group intended by the legislature to enjoy the protection of Minn.Stat. § 541.051, subd. 1.[2]

## DECISION

The district court properly granted summary judgment for the defendant because the plaintiff failed to offer evidence supporting his claim of misrepresentation, and because the abandonment of a septic tank is an

---

Williams fails to raise this issue. Furthermore, based on our decision that the district court properly dismissed Williams' claim of "fraud and misrepresentation," the exception would not apply anyway.

**2.** We note that Minn.Stat. § 541.051, subd. 1, specifically excludes:

[A]ctions for damages resulting from negligence in the *maintenance, operation or inspection* of the real property improvement against the owner.

(Emphasis added.) The exclusion does not apply here, however, since Williams is suing for the Tweeds' alleged negligence in abandoning the tank—rather than their failure to maintain, operate, or inspect the abandoned tank.

improvement to real property under Minn. Stat. § 541.051.

**Affirmed.**

SCHUMACHER, Judge (dissenting).

I respectfully dissent. The majority opinion misconstrues the nature of the cause of action in this case. Although the initial construction of the septic system may have been an improvement to real estate under the statute, appellant has not claimed that the construction caused his injuries. Appellant's claim arises from respondents' concealment of a septic tank on their property that they knew or should have known constituted a dangerous condition. Concealment of a dangerous condition clearly does not fall within the definition of improvement as used within the statutory scheme.

An improvement to property is

a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

*Kloster–Madsen, Inc. v. Tafi's, Inc.,* 303 Minn. 59, 63, 226 N.W.2d 603, 607 (1975) (quoting Webster's Third New International Dictionary 1138 (1971)). All of the cases where sewer or septic systems have been deemed an improvement to property involve defects to newly-added systems. *See Wittmer v. Ruegemer,* 419 N.W.2d 493 (Minn. 1988); *Ocel v. City of Eagan,* 402 N.W.2d 531 (Minn.1987); *Calder v. City of Crystal,* 318 N.W.2d 838 (Minn.1982); *Capitol Supply Co. v. City of St. Paul,* 316 N.W.2d 554 (Minn. 1982). In this case, respondents "improved" the property by putting a piece of wood over a hole in the ground and then covering the wood with dirt and grass. Granted, doing so involved the expenditure of labor. Although the wood not surprisingly rotted under these conditions and this lack of permanency was the direct cause of appellant's injury, I am even willing to concede that this may have been a permanent addition to the property. Nevertheless, I am at a loss to understand how "common sense" leads to the conclusion that hiding a potentially dangerous condition enhances the capital value of property. *See*

*Pacific Indem. Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 554 (Minn.1977) (common sense approach must be used to determine what is improvement to real property).

The majority asserts that covering the septic tank increased the salability, and thereby the value, of respondents' property. It purportedly did so by making it appear to potential buyers that the tank had been properly filled. This alleged increase in value, however, was the result of the misunderstanding suffered by the buyer as a result of respondents' actions. It was not the result of any actual increase in the property's value or utility. Indeed, once the property had been connected to the village sewer system, the septic tank no longer had any value or utility. If anything, the tank's effect on the worth of the property became negative. Even if respondents had properly filled in the tank, doing so would have at best restored the value of the property to what it would have been had the tank not existed in the first place. Actions that restore, rather than increase, the value or utility of property are repairs and do not fall within the meaning of Minn.Stat. § 541.051, subd. 1 (1992). *Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.,* 450 N.W.2d 183, 186 (Minn.App.1990), *pet. for rev. denied* (Minn. March 22, 1990).

Moreover, a landowner who creates a literal pitfall for subsequent users of the property in question is not within the class of persons the legislature intended to protect by enacting Minn.Stat. § 541.051, subd. 1. *See Ritter v. Abbey–Etna Mach. Co.,* 483 N.W.2d 91, 93 (Minn.App.1992) (statute intended to protect narrow class of persons from indefinite liability for building design and construction defects), *pet. for rev. denied* (Minn. June 10, 1992). Minn.Stat. § 541.051, subd. 1 was not intended to alter the statute of limitations in ordinary cases of landowner liability. *Ocel,* 402 N.W.2d at 534. This is an ordinary case before us. Thus, appellant's claim is governed by the rule that a vendor who actively conceals or fails to disclose a known artificial dangerous condition may under appropriate circumstances be liable for injuries to vendees or third persons. *Friberg v. Fagen,* 404 N.W.2d 400, 402 (Minn.App.1987) (citing Restatement (Second) of Torts § 353 (1965)).

The parties at a minimum dispute whether respondents concealed or failed to disclose the existence of the septic tank. As this raises a genuine issue of material fact, summary judgment should not have been granted. Minn.R.Civ.P. 56.03. I would remand for trial.